## CONVERSE v. KNIGHTS TEMPLARS' & MASONS' LIFE INDEMNITY CO.[1]

### (Circuit Court of Appeals, Seventh Circuit. July 26, 1898.)

### No. 478

1. INSURANCE — PLACES OF PROHIBITED RESIDENCE — TRAVEL — CONTINUOUS JOURNEY.

An assured permitted to travel through sections of country where residence is prohibited is not required to make a continuous journey in order not to violate the policy, but is entitled to make reasonable stops for purposes consistent with the character of a traveler; and, if sickness and death interrupt his travel in such locality, the policy is not invalidated.

2. SAME—POLICY—CONSTRUCTION—EVIDENCE.

A policy permitting residence in certain prescribed localities during the entire year prohibited residence in the Western hemisphere south of the thirty-second parallel between July and November of each year, but authorized assured "to pass as a passenger, by the usual routes of public conveyance, to and from any port or place within the foregoing limits; but, if he should * * * pass beyond or be without the foregoing limits," the policy should be void. Assured thereafter obtained permission to reside in the pine regions south of the thirty-second parallel at all seasons. On one occasion, he went from L., within such regions, to N., a place of prohibited residence, to consult a physician, and on the same day returned to L., and later started for his home by the usual route; by

[1] Rehearing denied October 3, 1898.

way of N., where he again consulted his physician, and on his advice went to the home of a friend, where he died. *Held*, that the policy should be construed as prohibiting assured from passing beyond or being without the regions of permitted residence, except to go, as a passenger, by the usual routes, between ports and places within those regions, and hence assured's journey from L. to N. and return did not constitute a breach thereof.

3. SAME—QUESTION FOR JURY.

Where an assured, in passing, as a passenger, over a usual route of conveyance from one place of permitted residence to another, stopped at a place of prohibited residence to consult a physician, and on his advice remained and died there shortly thereafter, whether such interruption of the journey was improper was a mixed question of law and fact for the jury.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The plaintiff in error, Carrie E. Converse, sued the Knights Templars' & Masons' Life Indemnity Company in assumpsit upon a policy of insurance upon the life of her husband, Charles S. Converse, who, at the date of the policy, April 12, 1889, resided at Roscommon, Mich. The policy contains the following clause, upon the construction of which the controversy turns:

"Fifth. The holder of this policy, during the continuance of his membership in this company, is freely permitted to reside in any settled portion of the Western hemisphere lying north of the thirty-second parallel of north latitude, at all seasons of the year; and in the United States lying south of said thirty-second parallel, excepting from the first day of July until the first day of November in each year; and in the Eastern hemisphere lying north of forty-second parallel of north latitude and west of the fortieth meridian of longitude east from Greenwich, at all seasons of the year; and in Italy south of said forty-second parallel, excepting from the first day of July to the first day of November in each year; and he may also pass as a passenger by the usual routes of public conveyance to and from any port or place within the foregoing limits; but, if he shall, at any time during the continuance of his membership in this company, pass beyond or be without the foregoing limits,   *   *   *   then, in each and every of the foregoing cases, this policy shall become null and void."

Besides the plea of nonassumpsit, the defendant in error pleaded specially that:

"Contrary to the express terms and conditions of the policy," the assured "on the 25th day of August, 1894, and for some time hitherto, to wit, between the 1st day of July and the 1st day of November, 1894, did reside in the United States south of the thirty-second parallel, and outside of the pine regions of the state of Mississippi, to wit, in the city of New Orleans, within the state of Louisiana;   *   *   *   and while then and there so residing, to wit, on said 25th day of August, and not while his residence was within the pine regions in the said state of Mississippi,   *   *   *   said Converse did die"; or, as it is alleged in the second plea, that the assured, "during a period longer than ten consecutive days, to wit, from August 6th to August 25th, did remain in the United States south of the thirty-second parallel, and outside of the pine regions of the state of Mississippi, to wit, in the city of New Orleans, within the state of Louisiana,   *   *   *   and while then and there so remaining, to wit, on said 25th day of August, and not while his residence was within the pine regions in the said state of Mississippi,   *   *   *   did die."

The evidence adduced at the trial shows, without conflict, the issue of the policy of insurance, the removal of Converse in June, 1891, from Michigan to Bogue Chitto, also called "Wellman," a place in

the pine regions of Mississippi a few miles south of the thirty-second parallel of latitude, and the consent of the company, evidenced by correspondence in writing, that he should reside in the pine regions of that state, on condition that if he should die of yellow fever the company should not be liable upon the policy. It further appears, without dispute, that on July 24, 1894, Converse, being in poor health, went with his wife from his home at Wellman to Long Beach, which is also in the pine regions of Mississippi, going by the usual route of travel, that is to say, from Wellman by the Illinois Central Railroad to New Orleans, and thence by the Louisville & Nashville Railroad to Long Beach. On July 31st he went from Long Beach to New Orleans to consult a physician, and on the same day returned to Long Beach. His condition of health growing constantly worse, on the morning of August 6th he started, in company with his wife, to return to his home at Wellman. Arriving at New Orleans, he went first to see his physician, and on his advice went to the house of his friend and associate in business, and there took immediately to bed, not to rise again. He died of heart disease on August 25, 1894.

At the close of the evidence, the court directed a verdict in favor of the defendant, and upon that ruling error is assigned.

Clark Varnum, for plaintiff in error.

C. H. Aldrich, for defendant in error.

Before WOODS and SHOWALTER, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The clause of the policy on which, presumably, the special pleas were intended to be predicated, contains two restrictions; one upon residence and travel, expressed in permissive words, and the other a prohibition "to pass beyond or be without the foregoing limits." The first of these pleas has reference to residence alone, and not only was not established, but was disproved; it being clear upon the evidence that the residence of Converse, from the time of his removal from Michigan to the date of his death, was at Wellman, and was not affected in the legal sense, or in the sense of the policy, by his temporary absence during the few days before and at the time of his death. The second plea is equivocal, and does not disclose with certainty upon what theory it was intended to be drawn. The substance of it is that for more than 10 days the assured "did remain, etc., in the city of New Orleans, and while then and there so remaining, etc., and not while his residence was within the pine regions, etc., did die." Fairly construed, this means that at the time of his death Converse was, and for more than 10 days had been, a resident, not of the pine regions of Mississippi, but of New Orleans. A part of the allegation being untrue, perhaps the whole should fall; but, even if the negative clause concerning residence in the pine regions of Mississippi be regarded as separable, and be rejected as irrelevant, or as contrary to the evidence, and if it be conceded, as alleged, that the deceased "remained" in New Orleans for more than 10 days, and while so remaining died, it does

not follow that he was not there in strict accordance with the permission given him "to pass as a passenger by the usual routes of public conveyance." That clause, like other terms of the policy, when construed strictly against the company, as it should be, and liberally in favor of the assured, gave him the privilege of going as passengers or travelers are accustomed to do.    He was not bound to be in constant conveyance on the line of his journey from the start to the end; but, like a traveler, he was entitled to reasonable stops on the way, for whatever reasonable purpose consistent with the character of a traveler, though not entitled, perhaps, to become what would be called a "sojourner"; and if, by reason of sickness, he was compelled to interrupt his journey, it is not to be said on that account that his policy became void.    There could certainly be no injustice in applying the strict rule of construction to pleas like these, designed to present a defense which has no merit beyond the mere letter of the supposed contract, the breach of which it is not pretended had the remotest relation to the health or death of the insured.    Such an insistence upon the technical meaning of the contract might well be met by a like insistence upon the technical rule of pleading; but we prefer to decide the case upon its merits as disclosed by the evidence.    Assuming the pleas to be sufficient to present the issue intended, we are of opinion that, upon a proper construction of the policy, the defense was not established.    If, for the sake of clearness, only the provisions touching residence and the right to go and come in the United States be regarded, permission is given to reside in the settled portions north of the thirty-second parallel of latitude at all seasons of the year, and south of that parallel at all times except from the 1st day of July to the 1st day of November in each year, and to "pass, as a passenger, by the usual routes of public conveyance, to and from any port or place within the foregoing limits; but, if he shall  *  *  *  pass beyond or be without the foregoing limits,  *  *  *  this policy shall become null and void."    The question is, what is the scope of the right given "to pass  *  *  *  to and from any port or place within the foregoing limits"?    The answer to the question depends mainly upon the force of the words "the foregoing limits," as used in that clause.    The contention of the defendant in error is, and it seems to have been the view of the court below, that the words imply a limitation of time as well as of territory.    According to the court's charge to the jury, the assured was forbidden to go "beyond the limits of prescribed residence," except that, under the permission to travel, he might go "from one port or place to any other port or place within the allowed territory, although the route might take him out of the prescribed limits."    That is to say, the words, "the foregoing limits," as if followed by the word "respectively," are to be applied distributively to each distinct region of residence for the time during which residence therein is permitted, and not to the entire region of residence as a whole, and without regard to the implied inhibition against residence in particular locations at particular seasons.    Following that construction, the court held that, while the journey from Wellman by way of New Orleans to Long Beach was passage by a usual route from one place of permitted residence to another, the going from Long Beach to New Orleans and re-

turning to Long Beach again on July 31st, no matter for what purpose, was "a breach of the conditions of the policy"; that is to say, of the prohibition to "pass beyond or be without the foregoing limits." On that interpretation, if Converse, after availing himself of the time between trains at New Orleans to see his physician, had gone on to Wellman, or to any other place of permitted residence except Long Beach, from which he started, and thence had returned immediately to Long Beach, though by way of New Orleans for the purpose of seeing his physician again, it would have been only what he was permitted to do. To state it in another way: If the journey of July 31st had been begun with the intention of going to Wellman, but, on arrival at New Orleans, it had been found necessary or desirable for any reason to return immediately to Long Beach, it could not have been done, consistently with the terms of the policy, without first going from New Orleans to some other place of permitted residence. Besides such incongruities, this construction involves contradiction in the terms of the particular provision of the policy under consideration. In one clause the right is given to pass from one place to another, "within the foregoing limits," and in the next clause it is said that to "pass beyond or be without the foregoing limits" will nullify the contract. If, according to the first clause, a right of travel may lie without or beyond "the foregoing limits," it cannot be reconciled with the equally explicit inhibition of the second clause against passing beyond or being without those limits. There is no such inconsistency in the terms of expression,—one clause permitting travel within, and the other forbidding the passing or being beyond the intended limits; and they can be made irreconcilable only by attributing to the words "the foregoing limits," as first used, one meaning at one time and another meaning at another time, according to the limitations prescribed for residence. If, on the contrary, those words be treated as having one and the same meaning with reference to all seasons, and as embracing as a unit all regions in which residence at any season is permitted in both hemispheres, the entire provision becomes harmonious and reasonable. The right given to travel in or through any region where residence is permitted for any part of the year, and from any port or place in one of those regions to another by the usual routes of conveyance, is not limited to any part of the year; and the prohibition of the next clause is against going or being outside of the limits of residence and of travel, as defined in the preceding clause. As employed in the second clause, the words "the foregoing limits" evidently have a wider scope than the same words in the preceding clause. Besides the regions of permitted residence, they include the usual routes of travel to and from ports and places in those regions. The meaning, therefore, is that if the assured shall pass beyond or be without the regions in which residence is permitted, except to go, as a passenger, by the usual lines of conveyance between ports or places within those regions, the policy shall be void; and perhaps it is to be inferred, though it is not explicitly stated, that if he shall be in a specified region of residence, but at a time when residence there is not permitted, except it be to "pass, as a passenger," upon a usual route of travel, the policy shall become void. If any such inference against the assured is allowable, that would seem to be the ut-

most scope of it. It was, therefore, a violation of no condition of the policy that the assured went from Long Beach to New Orleans, and back to Long Beach again, on the 31st day of July, 1894, nor that, on arrival at New Orleans on August 6th, he was compelled to interrupt his journey homeward, and to go to the house of a friend to die, unless, according to the fair meaning of the policy, construed liberally in favor of the assured, he by so stopping ceased to be a passenger and became a resident. As already indicated, our opinion is that, to be a passenger or traveler on a journey, by a route of public conveyance, one need not be on the constant go. He may not stay on his way so long, and under such circumstances, as to become a sojourner; but he has the right to stop, as a passenger or traveler is to be expected to do, for any purpose of business, health, or pleasure,—and especially when sickness makes it necessary. Whether, in this instance, the interruption of the journey was improper, was, in the view most favorable to the defendant in error, a question of fact, or of mixed law and fact, to be submitted to the jury upon proper instructions. Many decided cases have been cited, to some of which reference was made by the court below; but, upon our view of the proper construction of the policy, they are not relevant, and need not be reviewed. The point decided being that the evidence in the record does not show conclusively that there had been a breach of any condition of the policy, the question does not arise whether a conceded or established breach, for which by its terms the policy is to become void, may be excused because produced by an act of God or other like cause. The judgment below is reversed, and the cause remanded with direction to grant a new trial.